IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST HUNTER<br>12033 Arcadian Shores Court<br>Waldorf, MD 20602<br><br>　　　　　　Plaintiff<br><br>　　v.<br><br>Washington Metropolitan Area<br>Transit Authority<br>600 5th Street, NW<br>　　　　　　Defendant | Case: 1:18-cv-01494  Jury Demand<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 7/3/2018<br>Description: Employ. Discrim. H Deck<br><br>JURY TRIAL DEMAND |

COMPLAINT FOR UNLAWFUL EMPLOYMENT PRACTICES

**RECEIVED**

**JUL -3 2018**

**Clerk, U.S. District and Bankruptcy Courts**

**1   Preliminary Statement**

Plaintiff, Ernest Hunter, seeks redress for unlawful employment practices, including discrimination and retaliation by the Washington Metropolitan Area Transit Authority (WMATA), in violation of Title VII, 42 U.S.C. , Breach of Contract, Wrongful Termination and Negligent Supervision, as a consequence, and defamation. Plaintiff demands declaratory judgment, back pay, compensatory damages, and other

appropriate relief, legal and equitable, against the Defendant the Washington Metropolitan Area Transit Authority

## II. Jurisdiction and Venue

2.  The jurisdiction of the Court is invoked to secure the protection of and to redress the deprivation of right secured to Plaintiff by Title V11 of the Civil Rights Act of 1964, as amended, (Supp. 11, 1991), which provided for equitable and other relief against discrimination in employment of the basis of race, sex, religion, and national origin and color. Plaintiff has met the jurisdiction prerequisites for bringing this action, including filing a complaint and receiving a Notice of Rights with and from the U.S. Equal Employment Opportunity Commission (EEOC), dated April 4, 2018.

3.  This Courts jurisdiction is also invoked pursuant to 28 U.S.C Sections 1331, 1343(3) and (4) and this Court pendent jurisdiction, this being a suit authorized and instituted under the Civil Rights Act of 1964, as amended, and 28 U.S.C. Sections 2201 and 2202.

4.  This proceeding is instituted in the United States District Court for the District of Columbia pursuant to 28 U.S.C. Section 1391, as the judicial district in which the cause of action arose and in which the Defendant is located and doing business.

### III. Parties

5.      Plaintiff, Ernest Hunter is an African American male citizen who at all times relevant hereto was employed as a Disadvantage Business Enterprise (DBE) Compliance Specialist with (WMATA), located at 600 5th Street, NW, Washington, DC 20001.

1.      Defendant WMATA, is located and headquartered in the District of Columbia, at 600 5th Street, NW, Washington, DC 20001.

2.      Defendant Franklin Jones, was at all times relevant hereto served a Chief of Fair Practice and Director of EEO

### IV. Statement of Facts

3.      Plaintiff started his career with WMATA on May 20, 2013 as a DBE Compliant Specialist,

4.      Plaintiff was the only male employed as a DBE Compliance Specialist at all times relevant hereto.

5.      During his 4 year tenure with WMATA, Plaintiff was subjected to no less than 4 internal investigations, as a result of one female's recurring complaints against him.

6.      Although all of the female employee's complaints were fully investigated by WMATA, they were each proven to be frivolous.

7.      After being subjected to the last investigation resulting from the female employee's complaint, Plaintiff filed an internal complaint alleging harassment, discrimination and retaliation by the female employee.

8. WMATA in contrast to the manner in which they handled the females complaint, dismissed Plaintiff's complaint without interviewing any of his witnesses.

9. At the time of his hiring and throughout his tenure with WMATA, Plaintiff was in ongoing litigation with the District of Columbia Government relating to his previous employment, including a jury trial between the dates of June 27th thru June 30th 2016. Plaintiff also attended mediation relative to his previous litigation in July 2017.

10. Several of WMATA officials were aware of Plaintiff's ongoing litigations, as they previously were employed with the District Government during the times of Plaintiff's employment with the District Government and were witnesses in the previous litigation(s). WMATA was keenly aware of these facts.

11. In 2016, WMATA reassigned a procurement manager to the DBE office as the acting manager.

12. During his tenure as acting manager, the official attempted to deviate from federal regulations governing the DBE program.

13. As a result of his attempts, Plaintiff filed a complaint with WMATA's General Manager and Office of Inspector General.

14. After being made aware of the complaint the acting manager apologized to Plaintiff and informed him that the female employee that had initiated the complaints against Plaintiff had mislead him on the regulations.

15. The acting manager was later allowed to conduct interviews for a permanent manager of the DBE Program.

16. Plaintiff was qualified for and applied for the manager's job.

17. After Plaintiff applied for the position, the announcement was cancelled and later re-advertised without any consideration to Plaintiff's application or qualifications, and Plaintiff was never interviewed for the position.

18. As a result of the re-advertisement, (Mr. E. Wilkes) was hired in September 2016 as the permanent manager. The manager later shared with the staff, including Plaintiff that he had never managed any employees, which was a prerequisite for the position.

19. After Mr. Wilkes employment, the staff began to make internal complaints about his lack of experience and ability to head the office. The staff concerns were also shared with the Office of Inspector General.

20. Several weeks after his hiring, in early 2017, WMATA hired (Mr. Frank Jones) as the Chief of Fair Practice, a position that had oversight of both WMATA's DBE and EEOC programs.

21. Mr. Jones also shared with the staff that he lacked confidence in Mr. Wilkes experience and knowledge of the program.

22. Mr. Jones also informed the staff that he did not know about the program or what we did.

23. Due to both Mr. Wilkes and Mr. Jones inability to articulate the purpose of the DBE program, several assessments were initiated of the program in June 2017.

24. In early June 2017, Plaintiff was required to meet with an external consultant to discuss the DBE Program   During the meeting, Plaintiff expressed

to the consultant his opinion of the program, including the fact that both Mr. Wilkes and Mr. Jones lacked the prerequisite knowledge or communicative skills to manage the program and he felt the hiring of Mr. Wilkes without any consideration to Plaintiff's application and experience was both discriminatory and out of retaliation for his reporting the earlier attempt to deviate from the regulations to the General Manager.

25. On June 26, 2017, Plaintiff was ordered into a meeting by Mr. Wilkes and Mr. Jones for the purported purpose of continued assessment of the program.

26. At the beginning of the meeting Mr. Wilkes asked the staff for examples of how he failed to support the program. After listening to one female employee's response, Plaintiff attempted to respond and was told to be quiet by Mr. Jones.

27. Plaintiff then expressed concerns that the female employee was allowed to respond and asked why he was being prevented from speaking, and Mr. Jones informed him, because he could do that and to get out.

28. Plaintiff then asked if he was being terminated, and was informed by Mr. Jones that yes, he is putting him back on the streets. Plaintiff again asked Mr. Jones why, and was told again because he could.

29. As Plaintiff was attempting to comply with Mr. Jones order to get out, Mr. Jones attempted to block his leaving and ordered him to wait for the guards, after ordering Mr. Wilkes to call the guards.

30. Plaintiff informed Mr. Jones that he felt the calling of the guards was an unnecessary abuse of authority, for a non violent matter, in which he created.

31.     Afterwards, Mr. Hunter excused himself and left the premises without any disturbances.

32.     After leaving, Plaintiff's colleagues that were also in the meeting contacted their local 2 union official and informed him of managements action. Plaintiff colleagues also informed him how Mr. Jones had an image of his picture produced and posted at WMATA's various security stations.

33.     The following morning, Plaintiff called his manager, Mr. Wilkes and asked about the status of his employment. Mr. Wilkes informed him that as a result of the meeting, termination procedures had been initiated against him and that he should not return to WMATA.

34.     Afterwards, Plaintiffs contacted the union official himself and was informed that he was already made aware of what transpired and that they had already reached out to Mr. Jones and that the verbal termination was changed to administrative leave with pay, pending an investigation surrounding the meeting.

35.     Later on Mr. Wilkes contacted Plaintiff through his union official and attempted to facilitate a meeting in support of the investigation that he had been charged with conducting.

36.     Plaintiff informed Mr. Wilkes that he felt he was abused in the meeting and that as his manager he had the responsibility to inform him if he was acting inappropriate in the meeting and he did not do so, because he did not do anything but attempt to speak in the meeting.

37.     Plaintiff also expressed to Mr. Wilkes the fact that he was in the meeting and due to his failure to speak out against Mr. Jones abuses, which Mr. Wilkes

had already made the staff aware of, that he felt Mr. Wilkes was as guilty as Mr. Jones and as a result he should not be facilitating the investigation.

38. Mr. Wilkes insisted that Plaintiff come in to meet with him, and in early July 2017, Plaintiff and his union official met with Mr. Wilkes in the General Counsel's office of WMATA's headquarters.

39. At the beginning of the meeting, Plaintiff gave his union official a grievance directed at both Mr. Jones and Mr. Wilkes that he asked the union official to provide to the Human Resource Director, as he had been prevented from speaking to her both after and since the June 26, 2017 meeting.

40. Plaintiff had previously written to the Human Resource manager less than 6 months early with regards to the repeated investigations. Plaintiff informed her at that time he felt he was being harassed, and retaliated against.

41. Also at the beginning of the meeting Mr. Wilkes had a list of questions that he had typed up and required Plaintiff to answer. At the conclusion of the meeting, Mr. Wilkes provided copies of both his questions and Plaintiff responses to Plaintiff and the union official and informed the parties of his intent to finalize his investigation within 2 weeks and that in the interim, Plaintiff would receive normal pay and benefits.

42. Despite Mr. Wilkes assertion relative to Plaintiffs pay and benefits, , on the same day of the verbal termination, someone of whom WMATA could not identify informed payroll to remove Plaintiff from its system, impacting his pay and benefits, which still were not fully restored at the time of his separation in October 2017, nearly four months after the June 26th meeting.

43. The following day, Plaintiff reached out to Mr. Wilkes and ask that he bring a check that payroll had cut him in an attempt to correct mistakes made due to the verbal termination in the system to the front desk, because he was not interested in speaking to his coworkers while the investigation was pending.

44. Mr. Wilkes informed Plaintiff to call payroll and inform them that Mr. Wilkes is authorized to pick up the check and he would bring it to the front desk after he met with Mr. Jones.

45. Shortly after that conversation, Mr. Wilkes informed Mr. Hunter, that he would have to make other arrangements to get his check, as he was no longer with WMATA. Mr. Jones terminated Mr. Wilkes the day after Plaintiff and his union official met with him.

46. When Plaintiff attempted to pick up his check, he was hindered by security due to the defamation of his character, evidence by the posting of his image in WMATA security stations

47. After learning of the manager's termination, the union reached out to management with regards to the status of the investigation, and was told that a Human Resource manager would be completing the investigation.

48. In August 2017, Mr. Jones provided notices to the entire DBE staff that their positions would be subject to a Reduction in Force (RIF) effective October 14, 2017.

49. As a consequence to Mr. Jones decision to RIF the staff, we were provided a list of local 2 positions for bumping purposes of less tenured local 2 employees, and instructed to select other positions that we were interested in.

50. Human Resources then assured the impacted employees that they would be provided a list of job descriptions for the positions that they selected for the purpose of applying.

51. Plaintiff was never provided any job descriptions for his selected positions.

52. Later, the Human Resources Department disqualified Plaintiff from any of his selected positions, without ever providing the job descriptions or holding interviews. Consistent with the Local 2 labor agreement, similarly situated employees routinely are allowed to assume the duties of less tenured workers.

53. After Mr. Wilkes termination and the RIF of the entire staff, Mr. Jones hired (Ms. S. Edwards) as the director of the DBE program. Ms, Edwards is the same official that headed the interview panel that hired Plaintiff 4 years earlier. She later continued the defamation of Plaintiff's character, by informing WMATA's Board of Directors that the staff she hired was not qualified.

54. Also, shortly after Plaintiff was placed on administrative leave, WMATA's Office of Inspector General followed up with him on a complaint that he had initiated in April 2017. They asked Plaintiff to meet with them and share what happened in the June 26, 2017 meeting.

55. After Plaintiff met with the OIG, he was assured that his initial complaint and his complaint relating to the June 26, meeting would be summarized by that office and that he would get a copy of the synopsis regardless of their conclusion and that the synopsis would include whistleblower statues that protect WMATA employees. The OIG never followed through!

56. In spite of recommending the hiring of Plaintiff and later paying for updated training relative to the DBE program, Ms. Edwards indicated that Plaintiff was unqualified for the position

57. On October 14, 2017, WMATA once again removed Plaintiffs from its payroll and the union filed a group grievance relevant to the reduction in force. However, management never acknowledged the individual grievance directed at Mr. Jones by Plaintiff with regards to his actions during the June 26, 2017 meeting.

## FIRST CAUSE OF ACTION
### (DISCRIMINATION in violation of Title VII of the Civil Rights Act as amended)

58. Plaintiff re-alleges the allegations of Paragraphs 1-57 again as fully set forth herein.

59. Plaintiff was treated in a disparate manner when WMATA subjected him to multiple investigations, each proven to be frivolous in the months leading to his being placed on administrative leave, due to his past actions against the District Government and his complaints relative to the investigations.

60. Plaintiff was discriminated against by WMATA when that organization failed to interview any of the witnesses that he presented to support his claim of gender discrimination.

61. WMATA also demonstrated discrimination when it allowed a female worker to respond to a question raised by management at the same time it denied Plaintiffs attempt to respond.

62. WMATA demonstrated discrimination when it unilaterally refused to honor the union contract by not affording Plaintiff any bumping rights into positions held by less tenured local 2 employees.

63. WMATA also demonstrated discrimination when its OIG failed to timely summarize Plaintiffs complaints.

## SECOND CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF TITLE V11 OF THE CIVI L RIGHTS ACT)

64. Plaintiff re-alleges the allegations of Paragraphs 1-63 again as fully set forth herein.

65. Defendant and the actions of Frank Jones, Director of the Office of Fair Practices created and perpetuated a hostile, discriminatory and retaliatory work environment in violation of Title V11 of the Civil Rights act as amended.

66. WMATA refused to allow Plaintiff to assume any of the local 2 positions that were identified by the Human Resources Department as positions that were held by less tenured employees, although some of the positions were at a lower grade as means of continuing his employment, after being made aware of his past and ongoing complaints.

67. Plaintiff received a Notice of Rights letter after he filed a complaint upon being verbally terminated and while the incident was under internal investigations. The Notice was dated July 14, 2017 a mere two weeks after the June 26, 2017 incident. The notice would have given Plaintiff to approximately October 14, 2017 to file suit.

68. The Notice of Rights was sent to WMATA Jim Wynne the EEO manager at the time, who reports directly to Mr. Jones.

69. On August 3, 2017, F. Jones notified Plaintiff and the DBE Specialists that provided statements in support of Plaintiff and in opposition to Mr. Jones and Mr. Wilkes that they would be terminated trough a Reduction in Force effective October 14, 2017.

70. After Plaintiff sent notice to the EEOC with regards to that office failure to investigate the complaints as evidenced in the two weeks that it took them to send out the first Notice of Rights,, coupled with a similar complaint the Plaintiff filed with that office, after it failed to investigate his allegations against the DC Government, a second Notice of Rights was sent out dated April 4, 2018.

71. Plaintiff is alleging that WMATA and Mr. Jones became aware of the complaint with the EEOC when it sent the copy to Mr. Wynne and as a consequence, Mr. Jones reversed the verbal termination and paid Plaintiff until October 14, 2017 the same day that the initial 90 day notice would have expired.

### THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT)

72. Plaintiff re-alleges the allegations of Paragraphs 1-71 again as fully set forth herein.

73. Plaintiff position was covered by Local 2, OPEIU, and consistent with the union contract, Plaintiff attempted to file a grievance against Mr. Frank Jones, on multiple occasions since the June 26, 2017 meeting. This was done, by providing

a hard copy to his union official during the July meeting with Mr. Wilkes, sending a copy to the General Manager and General Counsel.

74. WMATA and its labor relations manager has refused to acknowledge Plaintiff individual grievance against Mr. Jones, and clearly has followed Mr. Jones elaborate deceptions, to include attempting to portray Plaintiff as an insubordinate worker for his refusal to go along with Mr. Jones abuses

75. Plaintiff was also made aware of various policies, including work place violence, whistleblower protections, and EEO policies upon being hired by WMATA. These policies provided for avenues to address abuses within the workplace and WMATA abridged Plaintiff attempts to exercise those avenues, including filing a complaint of workplace violence to include threatening and intimidating language demonstrated by Mr. Jones during the June 26, 2017 meeting ,

76. Plaintiff also sent notice to Mr. Dan Dyer, President of Local 2 expressing disappointed over the agencies failure to acknowledge his grievance against Mr. Frank Jones. The union president has never acknowledged the letter or individual grievance against Mr. Jones.

**FOURTH CAUSE OF ACTION**
**(NEGLIGENT SUPERVISION)**

77. Plaintiff re-alleges the allegations of Paragraphs 1-76 again as fully set forth herein.

78. Plaintiff sent notice to WMATA Human Resource Director expressing concerns about his treatment in the organization less than four months prior to his being verbally terminated in violation of the law and his labor agreement.

14

79. Plaintiff also sent notices to the organizations General Manager with regards to both the acting DBE's manager and the EEO manager, Mr. Wynne attempts to deviate from regulations and again after the abusive behavior of Mr. Jones during the June 26, 2017 meeting.

80. WMATA's Office of Inspector General was also made aware of the abuses within the DBE program and the lack of experience and qualifications of E. Wilkes and F. Jones.  The OIG complaint against Mr. Wilkes includes his admitting to not having the prerequisite management experience for the position.

81. The issues were once again expressed to the OIG after the June 26, 2017 meeting when that office reached out to Plaintiff and asked that he come in and meet with them.  Plaintiff did meet with them and informed them as he previously had, that WMATA was not in compliance to the applicable regulations and that Mr. Wilkes was wholly unqualified for the position.

82. Plaintiff also notified WMATA's General Counsel of the abuse perpetuated by Mr. Jones by sending her a letter after his verbal termination, she also did nothing!

**FITH CAUSE OF ACTION**
**DEFAMATION**

83. Plaintiff re-alleges the allegations of Paragraphs 1-82 again as fully set fourth herein.

84. Plaintiff reputation was damaged by the posting of his image throughout WMATA security stations, and by the mischaracterization of his qualifications.

A.       For all of the above reasons, Plaintiff prays that this court issues a declaratory judgment against defendant acts and practices that violates Title V11 of the Civil Rights Act as amended.

B.       Grant Plaintiff judgment against the Defendant for damages in the amount that compensates Plaintiff for damages due to loss income, emotional distress and court cost, and reinstatement to a position equivalent to that which he held prior to these violations.

### JURY DEMAND

Plaintiff demands trial by jury

Respectfully submitted,

*[signature]*

Ernest Hunter,
Plaintiff, pro se'
12033 Arcadian Shores Ct,
Waldorf, MD 20602
202 423- 1370

16

EEOC Form 161 (11/16) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Ernest Hunter<br>12033 Arcadian Shores Ct.<br>Waldorf, MD 20602 | From: | Washington Field Office<br>131 M Street, N.E.<br>Suite 4NW02F<br>Washington, DC 20507 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No |
|---|---|---|
| 570-2018-01421 | Alan W. Anderson, Deputy Director | (202) 419-0756 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Mindy E. Weinstein,
Acting Director

APR 0 4 2018

(Date Mailed)

Enclosures(s)

cc: Franklin Jones
Director, EEO
WMATA
600 5th Street, NW
Washington, DC 20001