**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

ERNEST HUNTER,

      *Plaintiff*,

   v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,

      *Defendant.*

---

Civil Action No. 18-1494 (CKK)

---

**Memorandum Opinion**
(September 2, 2020)

Ernest Hunter ("Plaintiff"), proceeding pro se, was an employee of the Washington Metropolitan Area Transit Authority ("WMATA") from May 20, 2013 through the time of his termination, on October 14, 2017. Plaintiff filed suit against WMATA under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging claims of gender discrimination and retaliation. Plaintiff also raises separate claims of breach of contract, negligent supervision, defamation, and for certain whistleblower violations. Presently before the Court is WMATA's [27] Motion for Summary Judgment. Upon consideration of the pleadings, the relevant legal authorities, and the record as a whole,[1] the Court **GRANTS IN PART** and **DENIES IN PART** WMATA's Motion for Summary Judgment. The Court grants Defendant's Motion with respect to Count I (gender discrimination), Count III (breach of contract), Count IV (negligent

---

[1] This Memorandum Opinion focuses on the following briefing and evidence submitted by the parties:
- Compl., ECF No. 1
- Am. Compl., ECF No. 22;
- Def.'s Mot. for Summ. J., ECF No. 27 ("Def.'s Mot.");
- Def.'s Mot. for Summ. J. Ex. 1, ECF No. 27-1 (Def.'s Stmt. of Material Facts Not in Dispute, or "Def.'s Stmt."); *id.*, Ex. 2, ECF No. 27-2 (Hunter Deposition, or "Hunter Dep.");
- Pl.'s Opp'n, ECF No. 28; and
- Pl.'s Suppl. Mot., Ex. 2. ECF No. 29-2 (Brief of OPEIU by Local 2 Arbitrator).

supervision), Count V (defamation), and Count VI (whistleblower violations).  The Court denies Defendant's Motion with respect to Count II (retaliation).

## I.   Background

### A.  Factual Background

Plaintiff Ernest Hunter was a male employee of WMATA's Small Business Program's Office, who worked as a Disadvantage Business Enterprise ("DBE") Compliance Specialist from May 20, 2013 to October 14, 2017.  Def.'s Stmt. ¶ 1.  In this role, Plaintiff oversaw contractual relationships with disadvantaged businesses, ensuring WMATA's compliance with applicable federal regulations.  Hunter Dep. 14:14–15:2.  Plaintiff alleges that he was the only male DBE Compliance Specialist within the DBE office.  Am. Compl. ¶ 4.  During his employment at WMATA, Plaintiff's bargaining unit was the Office and Professional Employees International Union ("OPEIU") Local No. 2 ("Local 2").  Def.'s Stmt. ¶¶ 2–3.  Local 2 provided grievance procedures for its members challenging employment practices within WMATA, including termination.  *Id.*

As a WMATA employee, Plaintiff was party to several informal and formal complaints. First, Plaintiff was the subject of multiple internal investigations initiated by a "long tenured" female colleague within the DBE office.  Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶¶ 4–5.  These investigations concerned Plaintiff's alleged non-compliance with certain internal WMATA policies and procedures, as well as allegations of inappropriate work place discussions. *See id.* at Ex. 1 (Owens Decl.), ¶ 8; *see also* Hunter Dep. 24:1.  WMATA conducted witness interviews regarding this alleged misconduct, but ultimately deemed the complaints to be "frivolous."  Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶¶ 4–5; *see also id.* at Ex. 2 (Toulson Decl.), ¶ 7.

On May 2, 2016, Plaintiff filed his own internal complaint of gender discrimination in response to the prior complaints lodged against him by his female colleague. *See* Def.'s Mot., Ex. 4, ECF No. 27-4 (Mem. to L. Johnson); *see also* Def.'s Stmt. ¶ 4. In his gender discrimination complaint, Plaintiff alleged that the offending colleague had circulated a petition to remove him from his job and had filed unfounded workplace violence complaints against him. *See* Def.'s Mot., Ex. 4, ECF No. 27-4. The WMATA General Counsel, however, concluded on August 2, 2016, that the complaint "fail[ed] to state a claim that would constitute an unlawful employment action." Def.'s Mot., Ex. 5, ECF No. 27-5 (Letter from C. Hoadley); *see also* Def.'s Stmt. ¶ 5. Plaintiff contends that WMATA did not interview any of his proffered witnesses before dismissing this complaint. Am. Compl. ¶ 8; *see also* Pl.'s Opp'n, Ex. 2, ECF No. 28-1 (Toulson Decl.), ¶ 8.

Shortly after WMATA concluded its investigation of Plaintiff's 2016 gender discrimination complaint, it hired Mr. Erick Wilkes as the new permanent manager of the DBE program in September 2016. Am. Compl. ¶ 18. Plaintiff had also applied for this position, but WMATA did not interview him for the job. Hunter Dep. 22:6–8. Plaintiff alleges that Mr. Wilkes lacked the prerequisite experience to manage the DBE office. Am. Compl. ¶ 18. In early 2017, WMATA also hired Frank Jones as the Chief of Fair Practices, a position overseeing both the DBE program and WMATA's EEOC program. *Id.* ¶ 20. According to Plaintiff, Mr. Jones also lacked an understanding of the DBE Program and its purpose. *Id.* ¶ 22. Ultimately, on April 27, 2017, Plaintiff filed an internal complaint with the WMATA inspector general ("OIG") asserting that the leadership of both Erick Wilkes and Frank Jones was a "hindrance" to the organization. Pl.'s Opp'n, Ex. 14, ECF No. 28-1 (OIG Complaint).

Following Plaintiff's OIG complaint, WMATA began to reevaluate the purpose and structure of the DBE program. Am. Compl. ¶ 23. In June 2017, Plaintiff met with external

consultants to discuss the improvement of processes and procedures within the department. Pl.'s Opp'n, at Pl.'s Stmt. ¶ 26. At this meeting, Plaintiff shared his concerns regarding DBE's discriminatory hiring practices and the poor communication skills of Mr. Wilkes and Mr. Jones. *Id.* ¶¶ 27–28. Plaintiff received no indication from the consultant that WMATA intended to eliminate the DBE program altogether. *Id.* ¶ 26.

On June 26, 2017, Plaintiff was called into a meeting (the "June 26 meeting") with Mr. Wilkes, Mr. Jones, and the DBE staff. *See* Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶ 21. At the beginning of the meeting, Mr. Wilkes asked the DBE team for input regarding any operational shortcomings the staff had observed. *See* Hunter Dep. 35:10–20. In response to Mr. Wilkes's query, a female DBE employee, Betty Toulson, expressed her view that management had not provided sufficient support for the DBE small business program. Pl.'s Opp'n, Ex. 2, ECF No. 28-1 (Toulson Decl.), ¶ 11. Following Ms. Toulson's comment, Plaintiff also attempted to voice his criticism, but Mr. Jones immediately took issue with Plaintiff's participation. *Id.* ¶¶ 12–13. Plaintiff tried again to speak, but Mr. Jones continued to "censor" him, requesting that Plaintiff remain silent. *Id.* The situation quickly became "toxic," with Mr. Jones calling for security and telling Plaintiff he would "end up on the curb." *Id.* ¶ 14. Mr. Jones then verbally terminated Plaintiff at the June 26 meeting, *see* Pl.'s Opp'n, Ex. 11, ECF No. 28-1 (C. Svoboda Witness Stmt.), and Mr. Wilkes notified WMATA Human Resources of Plaintiff's "immediate termination . . . due to insubordination." *Id.* at Ex. 23, ECF No. 28-1 (Email from E. Wilkes). According to Plaintiff, Mr. Jones later placed pictures of Plaintiff at various WMATA security stations. Am. Compl. ¶ 32.

In response to his termination, Plaintiff reached out to his Local 2 Shop Steward, William Geroux. Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶ 28. Mr. Geroux promptly filed a Step

2 grievance in a memorandum to Frank Jones, challenging Plaintiff's alleged verbal termination. *See* Def.'s Mot., Ex. 6, ECF No. 27-6 (Mem. from W. Geroux).  On June 28, 2017, Mr. Wilkes clarified that, in fact, Plaintiff had not been terminated, but instead would remain on administrative leave pending an investigation of the events that occurred during the June 26 meeting.  Pl.'s Opp'n, Ex. 22, ECF No. 28-1 (Letter from E. Wilkes).  Shortly thereafter, on July 6, 2017, Plaintiff and Mr. Geroux met with Mr. Wilkes to discuss the ongoing investigation into the June 26 meeting. Pl.'s Opp'n, at Pl.s Stmt. ¶ 37.

On July 10, 2017, Plaintiff filed a formal charge of discrimination with the EEOC alleging gender and religious discrimination, as well as retaliation in violation of Title VII of the Civil Rights Act of 1964.  Def.'s Mot., Ex. 11, ECF No. 27-11.  The complaint exclusively addressed alleged misconduct from the June 26 meeting.  *Id.*  Four days later, the EEOC mailed Plaintiff a Dismissal and Notice of Rights Letter.  *Id.* at Ex. 12, ECF No. 27-12.  On the same day, Frank Jones confirmed in a memorandum to Mr. Geroux that Plaintiff remained on paid administrative leave, pending his investigation.  *Id.* at Ex. 7, ECF No. 27-7.  Nonetheless, Mr. Geroux filed a Step 3 grievance on July 17, 2017, seeking clarification on the "verbal termination procedure" used against Plaintiff at the June 26 meeting.  *Id.* at Ex. 8, ECF No. 27-8.  A Step 3 grievance meeting then occurred on July 26, 2017, and on August 1, 2017, WMATA confirmed in a letter to Mr. Geroux that Plaintiff was not deemed to have been terminated at any point.  *Id.* at Ex. 9, ECF No. 27-9.  Following WMATA's August 1, 2017 correspondence, no further actions appears to have been taken regarding this specific grievance.  *See* Pl.'s Opp'n, at Pl.s Stmt. ¶ 12.

On August 8, 2017, WMATA informed the Local 2 President of its decision to restructure the DBE department and eliminate seven union positions, including Plaintiff's.  *Id.* at Ex. 10, ECF No. 27-10 (Letter from G. Gray).  Mr. Jones notified Plaintiff directly the same day that his DBE

position had been removed and advised Plaintiff that he would remain on administrative leave for an additional sixty days.  Pl.'s Opp'n, Ex. 18, ECF No. 28-1 (Letter from F. Jones).  Shortly thereafter, WMATA Human Resources employee, Amy Quillen, informed Plaintiff of his "bumping rights," which provided for his transfer to another union position for which he was deemed qualified.  *Id.* at Ex. 26, ECF No. 28-1 (Email from A. Quillen).  On August 22, 2017, Plaintiff proposed a list of eleven desired positions, *id.*, but was later informed by Ms. Quillen that he was unqualified for any of the positions he had selected.  *See id.* at Ex. 25, ECF No. 28-1 (Not. of Qualification); Hunter Dep. 41:17–42:10.

On October 14, 2017, WMATA formally terminated Plaintiff after he was unable to secure an alternative union position through the "bumping process."  Def.'s Stmt. ¶ 14.  On March 13, 2018, Plaintiff filed a second charge of discrimination with the EEOC.  *See id.* ¶ 15.  In this second EEOC complaint, Plaintiff alleged that WMATA had improperly investigated Plaintiff during his tenure at the company and that WMATA had wrongfully terminated him following his first EEOC complaint.  Def.'s Mot., Ex. 13, ECF No. 27-13.  On the basis of this conduct, Plaintiff formally raised claims of gender and age discrimination, as well as a claim of retaliation in violation of the Civil Rights Act of 1964 and the Age Discrimination and Employment Act.  *Id.*; *see also* Pl.'s Opp'n, Ex. 7, ECF No. 28-1.  On April 4, 2018, the EEOC mailed Plaintiff a Dismissal and Notice of Rights Letter regarding his second EEOC complaint.  Def.'s Mot., Ex. 14, ECF No. 27-14.

### B.  Procedural Background

Plaintiff filed a complaint before this Court on July 3, 2018.  *See generally* Compl., ECF No. 1.  Plaintiff's original complaint included a claim of gender discrimination in violation of Title VII.  *Id.* ¶¶ 58–63.  Here, however, Plaintiff omitted references to either the age or the religion-based discrimination he had noted in his prior EEOC complaints.  *See id.*  In his complaint, Plaintiff

also included claims of retaliation in violation of Title VII, breach of contract, negligent supervision, and defamation. *Id.* ¶¶ 64–84. WMATA answered Plaintiff's complaint on July 27, 2018, *see* Answer, ECF No. 4, and the parties subsequently engaged in discovery.

On July 8, 2019, Plaintiff filed his Amended Complaint. In this pleading, Plaintiff supplemented his five prior counts with an additional count for a "whistleblower violation." Am. Compl. ¶¶ 86–105. WMATA subsequently moved for summary judgment on all six of Plaintiff's counts in the Amended Complaint. Plaintiff has filed his opposition to WMATA's motion, and WMATA's motion is now ripe for the Court's review.

## II.    Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). Conclusory assertions offered without any factual basis

in the record cannot create a genuine dispute sufficient to survive summary judgment.  *Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).  Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion."  FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with "all justifiable inferences drawn in his favor."  *Liberty Lobby*, 477 U.S. at 255.  If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate.  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251–52.  In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution."  *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879–80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).  Be that as it may, the plaintiff is not relieved of his burden to support his allegations with competent

evidence.  *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009).  As in any context, where the plaintiff would bear the burden of proof on a dispositive issue at trial, at the summary judgment stage he bears the burden of production to designate specific facts showing that there exists a genuine dispute requiring trial.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  Otherwise, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

While "[a]ll pleadings shall be so construed as to do substantial justice," FED. R. CIV. P. 8(e), pleadings filed by a party proceeding pro se must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted).  For example, where a pro se party has filed multiple submissions, the district court must generally consider those filings together and as a whole.  *See Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *Sieverding v. United States Dep't of Justice*, 693 F. Supp. 2d 93, 101 n. 2 (D.D.C. 2010).  However, even with the liberality afforded pro se pleadings, the district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (quotation omitted).

### III.     Discussion

WMATA has filed a Motion for Summary Judgment on each of Plaintiff's six counts. Plaintiff opposes Defendant's motion with respect to all counts.

### A.  Count I – Gender Discrimination

Plaintiff's Count One is for gender discrimination under Title VII.  Am. Compl. ¶¶ 58–63. Plaintiff enumerates five alleged adverse actions supporting his Title VII claim: (1) the occurrence

of multiple "frivolous" investigations into Plaintiff, *id.* ¶ 59; (2) WMATA's failure to adequately investigate Plaintiff's 2016 claim of gender discrimination, *id.* ¶ 60; (3) WMATA's disparate treatment of Plaintiff during the June 26 meeting, *id.* ¶ 61; (4) WMATA's decision to terminate Plaintiff rather than to "bump" him to another requested post, *id.* ¶ 62; and (5) the failure of the WMATA OIG to timely summarize Plaintiff's 2017 discrimination complaints, *id.* ¶ 63.

In its Motion for Summary Judgment, WMATA contends that any Title VII claim deriving from Plaintiff's first three alleged adverse actions is time-barred.  *See* Def.'s Mot. at 4–6. WMATA then argues that any claim of discrimination arising from Plaintiff's latter two alleged adverse actions fails because "there is no evidence . . . that either of these events was because of his gender."  *Id.* at 7.  The Court addresses each argument in turn.

### 1. Statute Of Limitations

"Before suing under Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident."  *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 393 (D.C. Cir. 2020) (quotation omitted); *see also* 42 U.S.C. § 2000(e)-5(e)(1).  "[T]he 180–day filing period begins on the date the alleged unlawful practice occurred—not the date listed in the charge itself."  *Carter v. Washington Metro. Area Transit Auth.*, 503 F.3d 143, 145 (D.C. Cir. 2007).  Then, "[a]fter an employee files a charge with EEOC and receives notice of final agency action, the employee must file suit within ninety (90) days."  *Oviedo*, 948 F.3d at 394 (citing § 2000(e)-5(f)(1)).  Courts are to enforce such limitations periods strictly.  *See Mack v. WP Co., LLC*, 923 F. Supp. 2d 294, 298 (D.D.C. 2013).

Under these limitations periods, the Court finds that any Title VII claim deriving from Plaintiff's first three alleged adverse actions is time-barred.  First, Plaintiff complains of gender

discrimination that occurred during a June 26, 2017, meeting with WMATA management.  *See* Am. Compl. ¶ 61.  It is undisputed, however, that Plaintiff filed an EEOC complaint regarding this discriminatory conduct at the June 26 meeting on July 10, 2017.  Def.'s Stmt. ¶ 8.  Plaintiff then received his right-to-sue notice on July 14, 2017.  *See id.* ¶ 9.  And Plaintiff acknowledges himself that he had ninety days from the receipt of this notice to file a civil action regarding his claim of discrimination arising from the June 26 meeting.  Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶ 44; *see also* 42 U.S.C. § § 2000(e)-5(f)(1).  Yet, Plaintiff did not file any civil action regarding this alleged discrimination until July 3, 2018—nearly one year after he received notice of his right to sue.  As such, any claim of discrimination arising from the June 26 meeting is time-barred.

Next, Plaintiff alleges gender discrimination arising from multiple "frivolous" investigations conducted by WMATA.  Am. Compl. ¶ 59.  While it is unclear what precise investigations Plaintiff refers to here, *see id.* ¶¶ 3–5, 35, Plaintiff stipulates that the investigation at issue occurred "in the months leading up to his being placed on administrative leave," *id.* ¶ 59.  The record shows that Plaintiff was "placed on administrative leave" at the end of June 2017.  *See* Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶ 43.  Consequently, any of the purportedly adverse investigations must have occurred before this time, *i.e.*, "in the months leading up to his being placed on administrative leave."  Am. Compl. ¶ 59.

But Plaintiff did not complain of any "investigations" against him as a potential source of discrimination until his second EEOC complaint, filed on March 13, 2018.  *See* Pl.'s Opp'n, Ex. 7, ECF No. 28-1.  Even assuming that these discriminatory investigations continued until WMATA placed Mr. Hunter on administrative leave (June 26, 2017), the March 13, 2018 complaint came after the 180-day limitations period had expired.  *See* 42 U.S.C. § 2000(e)-5(e)(1).

Any Title VII claim arising from these allegedly discriminatory investigations is, therefore, untimely.[2]

Finally, Plaintiff's allegation that WMATA discriminated against him by failing to adequately investigate his 2016 gender discrimination complaint is also stale.  Am. Compl. ¶ 60.  Namely, Plaintiff laments WMATA's decision not to interview Plaintiff's proffered witnesses to a 2016 claim of gender discrimination.  *Id.* ¶¶ 8, 60.   But regardless of the complaint's merit, Plaintiff failed to file a timely EEOC charge within 180 days of that purported misconduct.  Specifically, Plaintiff lodged the original gender discrimination complaint against WMATA on May 2, 2016, and he does not dispute that WMATA responded to the complaint by August 2, 2016.  *See* Pl.'s Opp'n, at Pl.s Stmt. ¶¶ 4, 5; Def.'s Mot., Ex. 5, ECF No. 27-5 (Letter from C. Hoadley).  Accordingly, any alleged discrimination within the course of WMATA's investigation of Plaintiff's 2016 complaint would have occurred sometime before August 2, 2016.  *See* Def.'s Mot. at 1.  Plaintiff does not refute this point, and he also concedes that his earliest EEOC complaint was not filed until July 10, 2017.  Pl.'s Opp'n, at Pl.s Stmt. ¶ 8.  Because this July 10, 2017 complaint came more than 180 days after the conclusion of WMATA's investigation on August 2, 2016, any Title VII claim arising during the course of that investigation is time-barred.  *See Oviedo*, 948 F.3d at 393.

### 2.  Challenge On The Merits

WMATA challenges Plaintiff's two remaining allegations of Title VII gender discrimination—Plaintiff's October 14, 2017 termination and the OIG's treatment of Plaintiff's 2017 complaints—on the merits.  Def.'s Mot. at 7.  "A plaintiff establishes a prima facie case of

---

[2] Alternatively, if the Court were to read Plaintiff's July 10, 2017 EEOC complaint broadly to include allegations of discriminatory investigations, his Title VII claim thereunder would then be stale under the 90-day limitations period that was triggered by his right-to-sue notice on July 14, 2017.  42 U.S.C. § 2000(e)-5(f)(1).

gender discrimination by showing that (1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 76 (D.D.C. 2019) (quoting *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007)).  To survive summary judgment, the plaintiff must identify "sufficient evidence for a reasonable jury to find that the [defendant's] asserted non-discriminatory reason [for the adverse action] was not the actual reason and that [the defendant] intentionally discriminated against [the plaintiff] on the basis of a protected status." *Diaz v. WMATA*, 243 F. Supp. 3d 86, 90 (D.D.C. 2017), *aff'd sub nom. Diaz v. WMATA Metro Transit Police*, 726 F. App'x 1 (D.C. Cir. 2018) (quotation omitted).  Plaintiff has not done so here.

First, the Court does not find that "the record can support a reasonable inference of gender discrimination" with regards to Plaintiff's October 14, 2017 termination.  *Elmore v. Washington Metro. Area Transit Auth.*, 183 F. Supp. 3d 58, 69 (D.D.C. 2016).  The predicate rationale for Plaintiff's termination was a WMATA restructuring plan that affected seven union positions, including Plaintiff's position within the DBE program.  *See* Def.'s Stmt. ¶¶ 13, 14; *see also* Pl.'s Opp'n, at Pl.s Stmt. ¶ 13.  "[T]he elimination of the plaintiff's position altogether," is one of the "most common legitimate reasons for discharge."  *Czekalski*, 475 F.3d at 366 (quotation omitted).  Moreover, the record shows that female WMATA employees also had their positions eliminated through the same restructuring plan.  *See* Def.'s Mot. Ex. 10, ECF No. 27-10 (Letter from G. Gray).  This record belies any inference of gender-based discrimination against Plaintiff.

Plaintiff has also failed to raise a genuine dispute that WMATA's refusal of his "bumping rights" was discriminatory.  Following the restructuring plan, WMATA notified Plaintiff of his union "bumping rights," Pl.'s Opp'n, at Pl.'s Stmt. ¶ 43, which allowed for his transfer to a

comparable union position for which he was deemed "qualified," *id.* at Ex. 26, ECF No. 28-1 (Email from A. Quillen).  Plaintiff has offered some evidence that WMATA unfairly denied him access to qualifying positions, *see id.*, at Pl.'s Stmt. ¶¶ 46–48, but he has not provided any evidence to raise a reasonable inference that this treatment occurred "*because*" he was a man.  *Elmore*, 183 F. Supp. 3d at 69.  For example, he has not identified a "comparable instance" in which a woman, with similar qualifications and status, was afforded more favorable treatment regarding her "bumping rights."  *Id.*  And while Plaintiff has proffered evidence of a contentious relationship with management, *see* Pl.'s Opp'n, Ex. 2, ECF No. 28-1 (Toulson Decl.), ¶ 14, he has not shown that a "discriminatory animus" against him *as a man* was connected to his ultimate termination. *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).  As such, Plaintiff has not made out a prima facie Title VII claim of gender discrimination with regards to his October 14, 2017 termination.

Finally, Plaintiff has similarly failed to present sufficient evidence for a reasonable jury to find that the conduct of WMATA's OIG was motivated by gender discrimination.  Am. Compl. ¶ 63.  Specifically, Plaintiff alleges that WMATA's OIG failed to summarize complaints Plaintiff filed in April and June of 2017, and also failed to provide Plaintiff with a synopsis of relevant whistleblower protections.  *Id.* ¶ 55.  But Plaintiff offers no evidence whatsoever, or indeed even any plausible allegations, regarding how the OIG's actions exhibited gender animus.  The Court further notes that an inspector general's failure to timely summarize an employee complaint or offer legal information does not constitute an "adverse action" within the meaning of Title VII. *See Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003).  Accordingly, Plaintiff's allegations of the OIG's misconduct are plainly insufficient to establish a prime facie discrimination claim under Title VII.  *See Elmore*, 183 F. Supp. 3d at 69.

For the reasons above, Plaintiff has not presented sufficient evidence to demonstrate a genuine dispute of material fact regarding his Title VII claim of gender discrimination.  *See Liberty Lobby*, 477 U.S. at 251–52.  The Court, therefore, **GRANTS** WMATA's Motion for Summary Judgment as to Count I of the Amended Complaint.

### B.  Count II – Retaliation

In Count II of the Amended Complaint, Plaintiff asserts a claim for retaliation under Title VII.  Am. Compl. ¶¶ 64–71.  Plaintiff alleges that WMATA eliminated his position in August 2017 and later terminated him in October in retaliation for Plaintiff's July 10, 2017 EEOC complaint. *Id.*  WMATA seeks summary judgment on this count, arguing that Plaintiff has not shown a genuine dispute that his EEOC complaint was a "but-for" cause of his termination.  Def.'s Mot. at 7–8.

Title VII contains an anti-retaliation provision that makes it unlawful for an employer to "discriminate against any of his employees" because "he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e–3(a).  "To establish a prima facie case of retaliation based on circumstantial evidence, a plaintiff must show that (1) [he] engaged in statutorily protected activity; (2) [he] suffered a materially adverse action by [his] employer; and (3) a causal link connects the two." *Doak v. Johnson*, 798 F.3d 1096, 1107 (D.C. Cir. 2015) (internal quotation marks omitted) (quoting *Solomon v. Vilsack*, 763 F.3d 1, 14 (D.C. Cir. 2014)).  After the plaintiff makes his prima facie case, the defendant may proffer a legitimate, nondiscriminatory reason for its challenged action, and summary judgment in favor of the defendant is appropriate if the employee fails to rebut that rationale.  *See Hernandez v. Pritzker*, 741 F.3d 129, 133 (D.C. Cir. 2013) (noting that

15

"the 'central question' in [the] case is whether [the plaintiff] has produced sufficient evidence for a reasonable jury to find those reasons were but pretexts for retaliation.").

The Court finds that Plaintiff has established a prima facie claim of retaliation under Title VII.  First, it is well-settled and, undisputed by WMATA, that Plaintiff's July 10, 2017 EEOC complaint of discrimination constitutes "protected activity."  *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007).  Similarly, there is no dispute that WMATA's elimination of Plaintiff's position and subsequent termination of Plaintiff constitute a "materially adverse action."  *See Walker v. District of Columbia*, 279 F. Supp. 3d 246, 266–69 (D.D.C. 2017).  Finally, Plaintiff has also made a prima facie showing of causality based on temporal proximity.  *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) ("A plaintiff can establish the 'causation' element of the prima facie case by showing a tight temporal proximity between protected activity and an adverse employment action.").  WMATA announced its decision to eliminate Plaintiff's position in the company on August 8, 2017, only weeks after his July 10, 2017 EEOC complaint.  Def.'s Stmt. ¶¶ 8, 13.  This close proximity between Plaintiff's protected activity and the subsequent adverse employment action suffered suffices to show prima facie causation.  *See Walker*, 279 F. Supp. 3d at 270.

In response, WMATA challenges only the causation element of Plaintiff's retaliation claim.  Def.'s Mot. at 7–8.  It asserts that the elimination of Plaintiff's position in August 2017 was part of a generalized restructuring plan, which affected multiple employees in a non-retaliatory fashion.  *Id.*  WMATA further argues that, besides timing, "Plaintiff offers no evidence that the reduction of the positions was because Plaintiff filed his initial charge of discrimination on July 10, 2017."  *Id.* at 8.  Here, WMATA is correct that "[m]ere temporal proximity is not sufficient"

to rebut a non-retaliatory motive and survive summary judgment. *Iyoha*, 927 F.3d at 574. Something more is needed.

But Plaintiff has provided additional evidence of causation, beyond temporal proximity, sufficient to survive summary judgment on his retaliation claim. First, Plaintiff has shown that serious tension arose during the June 26 meeting between himself and WMATA management, including Frank Jones. For example, affiant Betty Toulson stated that "[t]he situation became toxic, when Mr. Jones stated he was going to fire Mr. Hunter and he would end up on the curb." Pl.'s Opp'n, Ex. 2, ECF No. 28-1 (Toulson Decl.), ¶ 14. And, notably, Mr. Jones attempted to verbally terminate Plaintiff during that same June 26 meeting. *See id.* at Ex. 23, ECF No. 28-1 (Email from E. Wilkes); *see also id.* at Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶ 24. It was this very conflict that gave rise to Plaintiff's July 10, 2017, complaint—the protected activity in question. *See* Def.'s Stmt. ¶¶ 6–8. The elimination of Plaintiff's position on August 8th occurred shortly thereafter, and, the record indicates that the restructuring plan in question derived, at least in part, from Mr. Jones's desire "to go in a different direction." Pl.'s Suppl. Mot., Ex. 2. ECF No. 29-2 (Brief of OPEIU by Local 2 Arbitrator), at 9–10; *see also* Pl.'s Opp'n, Ex. 18, ECF No. 28-1 (Letter from F. Jones). Considering such evidence in light most favorable to the non-movant, the Court concludes that a genuine dispute exists regarding whether the elimination of Plaintiff's DBE position on August 8th was causally connected to Plaintiff's EEOC complaint and the related conflict with Mr. Jones. *See Liberty Lobby*, 477 U.S. at 255.

Plaintiff has also presented sufficient evidence challenging the legitimacy of WMATA's decision to deny his union "bumping rights." On August 15, 2017, Amy Quillen, informed Plaintiff of his "bumping rights," which provided for his transfer to another union position for which he was deemed qualified. *See* Pl.'s Opp'n, Ex. 26, ECF No. 28-1. On August 22, 2017,

Plaintiff proposed a list of eleven desired positions, *id.*, but Ms. Quillen later informed him that he was unqualified for any of the positions he had selected, *see id.* at Ex. 25, ECF No. 28-1; *see also* Hunter Dep. 41:17–42:10.   Yet, Plaintiff has proffered conflicting evidence showing that WMATA, in fact, had deemed him qualified for certain "bumping" positions.   *See* Pl.'s Opp'n, Ex. 27, ECF No. 28-1 (Qualified Positions Chart); *see also id.* at Pl.'s Stmt. ¶ 47.   Additionally, Plaintiff testified that the "bumping" positions provided by WMATA were either unoccupied or filled by employees with less seniority than Plaintiff.   Hunter Dep. 40:4–8.   The record also suggests that, after the elimination of Plaintiff's position, WMATA introduced new positions to replace the eliminated DBE posts, either as non-union jobs or after the "bumping process" had closed.   *See* Pl.'s Suppl. Mot., Ex. 2. ECF No. 29-2 (Brief of OPEIU by Local 2 Arbitrator), at 12–15.   Finally, Plaintiff has proffered evidence that he was a respected employee, receiving positive reviews from WMATA supervisors.   *See* Pl.'s Opp'n, Ex. 1, ECF No. 28-1 (Owens Decl.), ¶¶ 6, 12; *see also id.* at Ex. 28, ECF No. 28-1 (WMATA Performance Evaluation).

Taken together, this record raises a genuine dispute of material fact for the jury regarding whether the elimination of Plaintiff's position and his eventual termination were causally connected to his July 10, 2017 discrimination complaint.   *See Cones v. Shalala*, 199 F.3d 512, 522 (D.C. Cir. 2000).   Moreover, the Court's conclusion reflects the "special caution" it must employ when evaluating retaliation claims at the summary judgment stage.   *See Aka*, 116 F.3d at 879–80. Accordingly, the Court **DENIES** WMATA's Motion for Summary Judgment as to Count II of the Amended Complaint.

### C.  Count III – Breach Of Contract

In Count III of the Amended Complaint, Plaintiff brings a claim for breach of contract. Am. Compl. ¶¶ 72–77.  WMATA moves for summary judgment on Count III, arguing, in part, that Plaintiff's breach of contract claim is time-barred.  Def.'s Mot. at 8–10.  The Court agrees.

The Court's initial task is to properly characterize Plaintiff's breach of contract claim. Here, Plaintiff's claim derives from a grievance filed under the collective bargaining agreement ("CBA") between his union, the OPEIU, and his employer, WMATA.  *See* Am. Compl. ¶ 74. Plaintiff's grievance pertained to the ongoing dispute with his supervisor, Frank Jones, originating from the June 26 meeting.  *See id.* ¶¶ 74–75.  Plaintiff first alleges that WMATA—his employer— refused to acknowledge this grievance, in breach of the governing CBA.  *Id.*  While Plaintiff generically labels this cause of action as a "breach of contract," the claim is properly construed as a cause of action arising under § 301 of the Labor Management Relations Act, *see* 29 U.S.C. § 185(a), because "[s]ection 301 completely preempts any action predicated upon state law," like Plaintiff's claim, "if that action depends upon the meaning of a collective-bargaining agreement." *Cephas v. MVM, Inc.*, 520 F.3d 480, 484 (D.C. Cir. 2008) (quotation omitted).

The inquiry, however, does not end there.  The Supreme Court has recognized the existence of "hybrid" claims, where a plaintiff raises not only a § 301 claim against his employer, but also charges his union with a violation of its duty of fair representation under the National Labor Relations Act.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 (1983).  Plaintiff raises such a claim here.

As an initial matter, Plaintiff's failure to name his union, the OPEIU, as a defendant in this case "does not mean that his claim is not a hybrid one."  *Washington v. AlliedBarton Sec. Servs., LLC*, 289 F. Supp. 3d 137, 144 (D.D.C. 2018), *aff'd*, 748 F. App'x 348 (D.C. Cir. 2018).  Instead,

19

the inquiry turns on the nature of his claim when viewed in light of the record as a whole. *See id.*
Here, Plaintiff's allegations lament the union's failure to properly acknowledge his formal
grievance against Mr. Jones, *see* Am. Compl. ¶ 76, and Plaintiff does not challenge that this
grievance fell within the processes set out by the CBA. *Cf. Cephas*, 520 F.3d at 489 (finding that
a breach of contract claim is not a "hybrid" where the grievance fell outside of the CBA). In fact,
the pleadings make clear that Plaintiff lodged his grievance against Mr. Jones "consistent with the
union contract" by "providing a hard copy [of his grievance] to his union official" in July 2017.
Am. Compl. ¶ 73. WMATA has also proffered evidence indicating that Plaintiff's grievance was
specifically covered by Article XX of the CBA between WMATA and the Local 2 union, *see*
Def.'s Mot. Ex. 6, ECF No. 27-6 (Mem. from W. Geroux), and Plaintiff acknowledges that he
participated in the pre-ordained steps of this grievance process, *see* Pl.'s Opp'n at Pl.'s Stmt. ¶¶
10–12. In light of these facts, "the Court concludes that Plaintiff's case is best described as a
hybrid § 301/fair representation claim." *AlliedBarton*, 289 F. Supp. 3d at 144; *see also Williams*
*v. Amalgamated Transit Union Local 689*, 245 F. Supp. 3d 129, 134 (D.D.C. 2017), *aff'd*, No. 17-
7076, 2017 WL 4217248 (D.C. Cir. Aug. 23, 2017).

Hybrid claims, like Plaintiff's, are "subject to the six-month statute of limitations provided
in § 10(b) of the National Labor Relations Act." *Simmons v. Howard Univ.*, 157 F.3d 914, 916
(D.C. Cir. 1998). The limitations period "begins to run when the claimant discovers, or in the
exercise of reasonable diligence should have discovered, the acts constituting the alleged
violation." *Id.* (quotation omitted). Plaintiff now concedes that WMATA provided his union
representative with a final response to Plaintiff's Step 3 grievance on August 1, 2017, *see* Pl.'s
Opp'n, at Pl.'s Stmt. ¶ 12, and, as noted above, WMATA formally terminated Plaintiff on October
14, 2017, *see id.* ¶ 14. Accordingly, the Court concludes that Plaintiff should have known of any

alleged violation of his rights under the CBA by October 14, 2017, at the latest.  Yet, Plaintiff did

not file this action until July 3, 2018, well after the six-month limitations period had expired.  *See*

*AlliedBarton*, 289 F. Supp. 3d at 144.  Plaintiff's breach of contract claim is, therefore, time-barred.

For the reasons stated above, the Court **GRANTS** WMATA's Motion for Summary

Judgment as to Count III of the Amended Complaint.[3]

### D.  Counts IV & V – Negligent Supervision and Defamation

In Count IV of the Amended Complaint, Plaintiff raises a claim of negligent supervision

and in Count V, a claim for defamation.  Am. Compl. ¶¶ 78–85.  With regards to each count,

WMATA moves for summary judgment on the basis of sovereign immunity.  *See* Def.'s Mot. at

10.  Accordingly, the Court will address Counts IV and V in tandem.

The gravamen of Plaintiff's claim for negligent supervision is that WMATA permitted

inexperienced and inadequate supervision within the company's DBE program.  Am. Compl. ¶¶

78–83.  For example, Plaintiff cites to his April 2017 complaint regarding the "obvious inability"

of supervisors Frank Jones and Erick Wilkes "to offer support to the staff relative to the DBE

program."  Pl.'s Opp'n, Ex. 3, ECF No. 28-1 (Hunter Decl.), ¶ 16; *see also* Am. Compl. ¶ 79.

Plaintiff also decries Mr. Wilkes's lack of "the prerequisite management experience" and

---

[3] On August 14, 2020, well after the close of briefing, Plaintiff submitted a supplemental brief noting a March 5, 2020, arbitral decision reinstating Plaintiff at WMATA.  *See* Pls.' Suppl. Br., ECF No. 30, at 3. In response, WMATA stipulated that the arbitral decision had no effect on any of Plaintiff's pending claims, save for Count III, which WMATA contends is now moot.  *See* Def.'s Resp. to Pl.'s Suppl. Br., ECF No. 31, at 1–3.  The Court has reviewed the recently submitted material and cannot conclude that Plaintiff's breach of contract claim in Count III of the Amended Complaint is moot, in light of the March 5th arbitral decision.  This arbitral decision addresses an OPEIU grievance filed on August 28, 2017, raising a general complaint regarding the DBE reduction in force.  *See* Pls.' Suppl. Br., Ex. 1, ECF No. 30-6, at 23.  Plaintiff's breach of contract claim, however, does not clearly refer to this particular grievance, *see* Am. Compl. ¶¶ 72–77, but instead appears to reference a separate chain of grievances, which reached a conclusion on August 1, 2017 and related directly to Plaintiff's conflict with Mr. Jones.  *See* Def.'s Mot, at Ex. 9, ECF No. 27-9 (Letter from T. Webb).  Given this factual ambiguity, the Court cannot find that Plaintiff's breach of contract claim, as presented in the Amended Complaint, derives from the grievance process at issue in the March 5th arbitral decision.  Consequently, the Court will rest its dismissal of Count III upon the issue of timeliness addressed above.

WMATA's deviation from certain applicable regulations.  Am. Compl. ¶¶ 81–82.  In turn, Plaintiff's defamation claim centers on WMATA's decision to post pictures of Plaintiff at various security stations and the company's "mischaracterization of [Plaintiff's] qualifications."  *Id.* ¶ 85.

WMATA possesses sovereign immunity from both of these claims.  Through the WMATA Compact, "Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities."  *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997); *see also* U.S. CONST. amend. XI.  "Section 80 of the WMATA Compact provides, in pertinent part, that WMATA shall be liable for its contracts and for its torts, but shall not be liable for any torts occurring in the performance of a governmental function."  *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 393 (D.C. Cir. 2020) (quotation omitted).  An action constitutes a "governmental function" if it is "discretionary."  *Beebe*, 129 F.3d at 1287.  "To determine whether a function is discretionary, and thus shielded by sovereign immunity, [the Court] ask[s] whether any statute, regulation, or policy specifically prescribes a course of action for an employee to follow."  *Id.* (quotation omitted).  "If no course of action is prescribed, [the Court] then determine[s] whether the exercise of discretion is grounded in social, economic, or political goals."  *Id.*  "If so grounded, the activity is 'governmental,' thus falling within section 80's retention of sovereign immunity."  *Id.*

The alleged misconduct underwriting Plaintiff's claims in both Counts IV and V constitutes a discretionary discharge of WMATA's governmental functions.  Plaintiff's negligent supervision claim turns on perceived weaknesses in his supervisors' professional qualifications and administrative styles.  His defamation claim similarly rests on security and personnel decisions made by WMATA with regard to Plaintiff as an employee of the company.  The parties have identified no statute, regulation, or policy governing such actions, and the D.C. Circuit has made

clear that "decisions concerning the hiring, training, and supervising of WMATA employees are discretionary in nature, and thus immune from judicial review." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997). The conduct in question here is no different, and, indeed, this Court has found similar complaints of negligent supervision and defamation insulated from judicial scrutiny. *See Headen v. Washington Metro. Area Transit Auth.*, 741 F. Supp. 2d 289, 295–96 (D.D.C. 2010). As such, Counts IV and V of the Amended Complaint cannot survive summary judgment, and, therefore, the Court **GRANTS** WMATA's Motion for Summary Judgment as to these counts.

### E. Count VI – Whistleblower Violation

In Count VI of the Amended Complaint, Plaintiff asserts a generic claim for a "whistleblower violation." Am. Compl. ¶¶ 86–105. Plaintiff's whistleblower claim derives from the alleged malfeasance of WMATA's OIG and Plaintiff's termination following a series of internal complaints. *See id.* While not a model of clarity, Plaintiff's whistleblower claim nominally implicates both state and federal whistleblower law. *See id.* WMATA now moves for summary judgment with regards to both putative whistleblower violations. Def.'s Mot. at 12–14. The Court will address each individually.

First, WMATA asserts that Plaintiff's claim under the whistleblower statute of the "DC Government" falls short because WMATA is not bound by such laws. Am. Compl. ¶ 89. The Court agrees. Under the Employees of District Contractors and Instrumentality Whistleblower Protection Act (the "DCWPA"), the District of Columbia "prohibits a supervisor from 'threaten[ing] to take or tak[ing] a prohibited personnel action or otherwise retaliat[ing] against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order.'" *Coclough v. Akal Sec., Inc.*, 303 F. Supp. 3d 123, 134 (D.D.C.

2018) (citing D.C. Code § 2–223.02(a)).  But the District of Columbia may not "impose its legislative enactment[s] upon [WMATA] without the express consent of the other signatories and of the Congress of the United States."  *Lucero-Nelson v. Washington Metro. Area Transit Auth.*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) (holding that WMATA is not subject to claims under the D.C. Human Rights Act).  Plaintiff offers no evidence that Maryland, Virginia, or the United States Congress has consented to the application of the DCWPA.  Moreover, this Court has recently rejected the applicability to the DCWPA to WMATA, finding no such consent amongst the WMATA signatories.  *See Slack v. Washington Metro. Area Transit Auth.*, 325 F. Supp. 3d 146, 155–57 (D.D.C. 2018).  Consequently, the Court concludes that the DCWPA is inapplicable to WMATA, and, therefore, Plaintiff's state law whistleblower claim cannot survive summary judgment.

Next, Plaintiff's whistleblower claim also cites to "various federal Whistleblower Protection laws."  Am. Compl. ¶ 88.  Regarding this "federal" claim, WMATA argues that "all federal whistleblower statutes require a plaintiff to exhaust his administrative remedies first before a private cause of action can be filed," and that Plaintiff has not properly exhausted his remedies here.  Def.'s Mot. at 13.  Plaintiff's Amended Complaint, however, alleges that he did exhaust his administrative remedies by making a complaint to the WMATA OIG and subsequently participating in a related interview.  *See* Am. Compl. ¶ 105; Pl.'s Opp'n, Ex. 32, ECF No. 28-1 (US DOT OIG Whistleblower Claim).

The Court finds this discussion of exhaustion premature.  Plaintiff does not cite to any specific federal whistleblower statute in his Amended Complaint, or otherwise clarify the source of his federal whistleblower claim.  *See* Am. Compl. ¶¶ 86–105.  Indeed, Plaintiff's reference to "various federal Whistleblower Protection laws" could implicate numerous federal statutes, each

with unique exhaustion requirements. *Id.* ¶ 88.  For example, WMATA cites to whistleblower protections in the National Transit Systems Security Act and the Surface Transportation Assistance Act.  Def.'s Mot. at 13–14.  Both statutes require a claimant to first seek an administrative remedy through the Department of Labor.  *See* 6 U.S.C. § 1142(c)(1); 49 U.S.C. § 31105(b) & (c). Identical exhaustion requirements, however, are not present under different federal statutes, such as the False Claims Act, which also provides a statutory cause of action for certain whistleblower claims.  *See Slack*, 325 F. Supp. 3d at 152 (citing 31 U.S.C. § 3730(h)).

The Court need not engage in guessing-games regarding the nature of Plaintiff's federal whistleblower claim.  Instead, it will dismiss this claim on a threshold issue: subject matter jurisdiction.  "It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue sua sponte." *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008) (quotation omitted).  Indeed, a federal court may not proceed to the merits of a claim before assuring itself that subject matter jurisdiction is proper.  *See Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 826 (D.C. Cir. 2007).

Here, WMATA retains the sovereign immunity of Maryland, Virginia, and the District of Columbia, and this Court lacks jurisdiction over Plaintiff's federal whistleblower claim unless that immunity has been waived.  *See Slack*, 325 F. Supp. 3d at 153.  Sovereign immunity can be waived where: (1) Congress "unequivocally expresses its intent to abrogate that immunity," or (2) "a state may voluntarily waive its immunity by making a clear declaration that it intends to submit itself to a federal court's jurisdiction."  *Id.* at 151 (quotations omitted).  Plaintiff has presented no evidence of such a waiver under either criterion, and the Court finds none in the record.  To the contrary, precedent in this jurisdiction specifically indicates that WMATA *has not* waived its sovereign immunity as to certain federal whistleblower claims.  *See id.* at 152–155.  Without more

specificity from Plaintiff, the Court cannot conclude that it possesses subject matter jurisdiction over his "federal" whistleblower claim.

For the reasons stated above, the Court **GRANTS** WMATA's Motion for Summary Judgment as to Count VI of the Amended Complaint.  The Court, however, specifically dismisses Plaintiff's federal whistleblower claim **WITHOUT PREJUDICE**.

### IV.    Conclusion

For the reasons set forth in this Memorandum Opinion, the Court **GRANTS IN PART** and **DENIES IN PART** WMATA's [27] Motion for Summary Judgment.  Specifically, the Court **GRANTS** WMATA's Motion as to Counts I, III, IV, V, and VI of the Amended Complaint.  The Court **DENIES** WMATA's Motion as to Count II of the Amended Complaint.  An appropriate Order accompanies this Memorandum Opinion.


Date:  September 2, 2020

                                                    /s/
                                   COLLEEN KOLLAR-KOTELLY
                                   United States District Judge